**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DANIEL TROYA<br>Register No. 75817-004<br>USP Terre Haute, U.S. Penitentiary<br>4700 Bureau Road South<br>Terre Haute, IN 47802,<br><br>*Plaintiff*,<br><br>v.<br><br>FEDERAL BUREAU OF PRISONS<br>320 First St. NW<br>Washington, D.C. 20534;<br><br>MICHAEL CARVAJAL,<br>*in his official capacity as Director*<br>*of the Federal Bureau of Prisons*<br>320 First St. NW, Suite 654<br>Washington, D.C. 20534;<br><br>ANDRE MATEVOUSIAN,<br>*in his official capacity as Regional Director*<br>*of the North Central Region*<br>*of the Federal Bureau of Prisons*<br>400 State Ave., Suite 800<br>Kansas City, KS 66101; and<br><br>STEVEN KALLIS,<br>*in his official capacity as Acting Warden*<br>USP Terre Haute, U.S. Penitentiary<br>4700 Bureau Road South<br>Terre Haute, IN 47802,<br><br>*Defendants*. | Civil Action No. 22-767 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Daniel Troya, by and through his undersigned counsel, for his Complaint against

the Federal Bureau of Prisons ("BOP"), BOP Director Michael Carvajal, BOP North Central

Regional Director Andre Matevousian, and Acting Warden Steven Kallis, alleges as follows:

## INTRODUCTION

1.      This suit challenges BOP's substantive but unpublished revision of 28 C.F.R. § 540.44 ("Section 540.44"), which is the regulation governing in-person visiting privileges for federal inmates' relatives, friends, and other associates.  Through this procedurally improper constructive amendment, BOP has adopted and implemented a new policy of prohibiting inmates from receiving visits from spouses and other immediate family members whom the inmates did not know before their incarceration.

2.      Federal inmates' visiting privileges for their immediate family members are supposed to be governed by 28 C.F.R. § 540.44(a) as written, which defines "members of the immediate family" as "mother, father, step-parents, foster parents, brothers and sisters, spouse, and children."  Section 540.44(a) further provides that such individuals "are placed on the visiting list, absent strong circumstances which preclude visiting."

3.      By contrast, federal inmates' visiting privileges for their "friends and associates" are governed by 28 C.F.R. § 540.44(c).  That subsection states that visiting privileges ordinarily may not be extended to an inmate's "friends and associates" unless the inmate had a relationship with the friend or associate before the inmate's confinement.  This criterion is known as the "prior relationship rule" or "prior relationship requirement," and is only found in Section 540.44(c).  By contrast, Section 540.44(a)'s provision governing visits by immediate family contains no prior relationship rule.

4.      Section 540.44 was first promulgated in 1980, and later amended in 1991 and 2003, pursuant to notice-and-comment rulemaking procedures set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 553(b) & (c).  *See Control, Custody, Care, Treatment, and Instruction of Inmates*, 45 Fed. Reg. 44220 (June 30, 1980); *see also Control, Custody, Care, Treatment and*

*Instruction of Inmates; Security Level Designations*, 56 Fed. Reg. 4158 (Feb. 1, 1991); *Visiting Regulations: Prior Relationship*, 68 Fed. Reg. 10656 (Mar. 6, 2003). The 2003 version of Section 540.44 is the one that is currently published in the Code of Federal Regulations.

5.      Substantive changes to Section 540.44 must be made pursuant to those same notice-and-comment rulemaking procedures. *E.g.*, 5 U.S.C. § 551(5) (defining "rule making" as the "agency process for . . . amending[] or repealing a rule").

6.      When amending Section 540.44 in 2003 in order to expand the scope of the prior relationship rule, BOP responded to public comments about such expansion by confirming that "[t]he prior relationship requirement ***does not apply*** to immediate family members" covered by Section 540.44(a). *Visiting Regulations: Prior Relationship*, 68 Fed. Reg. at 10657 (emphasis added).

7.      Nevertheless, in contradiction of this 2003 statement, and without following rulemaking procedures, BOP has constructively amended Section 540.44 by expanding the reach of Section 540.44(c)'s prior relationship rule so that it now applies to members of an inmate's immediate family identified in Section 540.44(a).

8.      BOP's new policy eliminates the regulatory presumption that members of the immediate family will be permitted to visit "absent strong circumstances which preclude visiting," 28 C.F.R. § 540.44(a), and replaces it with a new presumption that immediate family members (including spouses, children, and siblings) will be *prohibited* from visiting if their relationship with the inmate began after the inmate's incarceration.

9.      Viewed another way, in light of the regulations as currently published, BOP's new policy means that a spouse who marries an inmate after the inmate's incarceration is not treated as a "member of the immediate family" under 28 C.F.R. § 540.44(a), for whom no pre-incarceration

relationship is required.  Instead, such a spouse is treated as a "friend" or "associate" under Section 540.44(c), whose visit would be barred under the prior relationship rule.  Similarly, if an inmate's child or sibling were born after the inmate's incarceration, BOP's new policy would treat the child or sibling as a "friend" or "associate" under Section 540.44(c), rather than as a "member of the immediate family" under Section 540.44(a), and would bar any visit by that child or sibling.

10.     BOP has never publicized this new policy or its revision of its regulations.

11.     Rather, BOP's new policy and improper regulatory revision came to light when Plaintiff, a BOP inmate, entered a request to place his wife, Carli Troya, on his visiting list for an in-person, non-contact visit.  Plaintiff and Mrs. Troya were married during Plaintiff's incarceration and did not know each other before Plaintiff's incarceration.  In connection with the visiting request, Mrs. Troya submitted information for a background check and, upon information and belief, passed the background check.  Still, Defendants denied the visiting request solely on the basis of their application of Section 540.44(c)'s prior relationship requirement—previously only applicable to "friends and associates"—to Plaintiff's *spouse*, and they have stated that the denial was in accordance with BOP policy.  Indeed, Defendants have failed to offer any other justification for the denial.  For example, Defendants have never identified any security concerns specific to Mrs. Troya; instead, they have only cited her lack of a pre-incarceration relationship with Plaintiff.  As a result of BOP's new policy, Plaintiff's wife is permanently barred from visiting him.

12.     Following Plaintiff's exhaustion of his administrative appeal remedies, undersigned counsel further sought to avoid litigation by sending multiple letters to Defendants that invited them to reevaluate and reverse the denial of Plaintiff's spousal visiting request.  These letters expressly discussed BOP's 2003 statement in the Federal Register that "[t]he prior relationship requirement does not apply to immediate family members."

*Visiting Regulations: Prior Relationship*, 68 Fed. Reg. at 10657.  Nonetheless, Defendants declined to reevaluate their application of the prior relationship rule to Plaintiff's request.

13.     Defendants violated the APA by engaging in agency action without observance of procedure required by law.  *See* 5 U.S.C. § 706(2)(D).  They did so by expanding Section 540.44(c)'s prior relationship rule for inmates' "friends and associates" so that it also governs inmates' immediate family, without affording any public notice and opportunity for comment as required by the rulemaking procedures set forth at 5 U.S.C. § 553, and then by applying the newly expanded prior relationship rule in order to deny Plaintiff's spousal visiting request.

14.     Defendants also violated the APA through agency action that was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.  *See* 5 U.S.C. § 706(2)(A).  They did so by constructively amending Section 540.44 without providing a reasoned explanation and in contradiction of BOP's own 2003 Federal Register statement about the prior relationship rule's inapplicability to immediate family members.  *See Visiting Regulations: Prior Relationship*, 68 Fed. Reg. at 10657.  Defendants also failed to follow BOP's own published regulations, by denying Plaintiff's spousal visiting request in reliance on Section 540.44(c)'s prior relationship rule, instead of applying Section 540.44(a) as written.

15.     Finally, Defendants' expansion of the prior relationship rule to cover immediate family also violates the APA because it infringes inmates' First Amendment right to associate with family members.  *See* 5 U.S.C. § 706(2)(B).  BOP's new policy prohibits Plaintiff specifically and inmates generally from receiving visits by immediate family whom they did not know prior to incarceration, in circumstances that do not present any security concerns.

16.     In short, Defendants' violation of the APA's rulemaking processes; their arbitrary, capricious, and otherwise improper and unlawful agency action; and their unjustified restriction of

inmates' constitutional right to associate with spouses and other immediate family warrant declaratory and injunctive relief from this Court.

## PARTIES

17.     Plaintiff Daniel Troya is and was at all times relevant to this action an inmate incarcerated at the Special Confinement Unit ("SCU") of the United States Penitentiary ("USP") at Terre Haute, Indiana.  The USP is a high-security division of the Federal Correctional Complex ("FCC") at Terre Haute.

18.     Defendant BOP is a division of the United States Department of Justice, and a federal agency under the APA.  As relevant to this action, BOP oversees the USP and promulgates regulations—including 28 C.F.R. § 540.44—that apply to federal prisons and inmates.  *See* 18 U.S.C. § 4001(b)(1) (Attorney General "shall promulgate rules" governing federal prisons); 18 U.S.C. § 4042(a) (BOP, under Attorney General's direction, shall "have charge of the management and regulation of" federal prisons).  Further, BOP's Central Office, located in Washington, D.C., issued the final denial of Plaintiff's visiting request that endorsed the regulatory revision at issue.

19.     Defendant Michael Carvajal, who is being sued in his official capacity, is and was at all times relevant to this action the Director of the BOP.  In this capacity, the Director oversees the BOP's promulgation of regulations applicable to federal prisons and inmates.  *See* 28 C.F.R. § 0.96 (Attorney General's delegation of certain rulemaking authorities to BOP Director).  Further, the Director oversees and manages the Central Office that issued the final denial of Plaintiff's visiting request and endorsed the regulatory revision at issue.

20.     Defendant Andre Matevousian, who is being sued in his official capacity, is the Regional Director for the BOP North Central Region.  In this capacity, the Regional Director oversees the North Central Regional Office, which issued the initial decision affirming the denial

of Plaintiff's visiting request, and likewise endorsed the revision at issue by confirming that the denial of Plaintiff's request was "in accordance with policy."

21.     Defendant Steven Kallis, who is being sued in his official capacity, is the Acting Complex Warden at the FCC at Terre Haute.  A prior incumbent of the Complex Warden office issued the denial of Plaintiff's visiting request, which was ultimately affirmed by BOP's Regional and Central Offices.

## JURISDICTION AND VENUE

22.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702. Plaintiff seeks declaratory and injunctive relief pursuant to 5 U.S.C. § 706 and 28 U.S.C. §§ 2201 and 2202.

23.     Plaintiff has exhausted his administrative remedies.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1)(A) and (B) because Defendants are officers, employees, or agencies of the United States; at least one Defendant (BOP) resides in this District; and a substantial part of the events giving rise to Plaintiff's claim occurred in this District, namely BOP's improper revision of 28 C.F.R. § 540.44 and adoption of its related policy expanding the prior relationship rule.

25.     Venue is also proper in this District because Defendants have already conceded that venue would not be proper in the district where Plaintiff is in custody.  Specifically, in 2018, Plaintiff filed a suit in the U.S. District Court for the Southern District of Indiana to challenge Section 540.44(c)'s prior relationship requirement in the context of the denial of Plaintiff's request to have a different person (who was not a relative) visit him.  In that case, Plaintiff named the same official capacity defendants (*i.e.*, BOP's Acting Director, BOP's Regional Director, and the USP Warden), although the offices were held by different individuals at the time.  When filing their

answer in that case, those official capacity defendants—all represented by the U.S. Department of Justice—denied that venue was proper in the Southern District of Indiana.  *See* Amended Answer of Official Capacity Defendants at 4 ¶ 2, *Troya v. Hurwitz, et al.*, No. 2:18-CV-311 (S.D. Ind. May 20, 2019) (ECF No. 44) ("To the extent that any response is required, the Official Capacity Defendants deny [Plaintiff's allegation that the Southern District of Indiana is the appropriate venue].").[1]

## FACTUAL BACKGROUND

### A.     BOP's Promulgation of 28 C.F.R. § 540.44(c)

26.     BOP publishes substantive regulations, which are promulgated through notice-and-comment rulemaking and codified in the Code of Federal Regulations.

27.     USP inmates are permitted visitors in accordance with BOP regulations.  These regulations set forth the procedures by which an inmate may request visiting privileges.

28.     The regulation at issue here, 28 C.F.R. § 540.44, states that "[a]n inmate desiring to have regular visitors must submit a list of proposed visitors to the designated staff."

29.     Under Section 540.44(a), an inmate's list of proposed visitors may include "[m]embers of the immediate family," including an inmate's "spouse," who are to be placed on the visiting list "absent strong circumstances which preclude visiting."  28 C.F.R. § 540.44(a) ("*Members of the immediate family.*  These persons include mother, father, step-parents, foster parents, brothers and sisters, spouse, and children.  These individuals are placed on the visiting list, absent strong circumstances which preclude visiting." (italics in original)); *see also* Fed. Bur. of Prisons, *Institution Supplement: Visiting Regulations*, THX-5267.09C, § IV.C (Nov. 1, 2019)

---

[1] Plaintiff's earlier suit is no longer pending.  After the district court partly denied the defendants' motion for judgment on the pleadings and then authorized discovery, the parties filed a joint stipulation of dismissal in February 2020 and the district court closed the case.

(hereinafter, "Institution Supplement") ("Immediate family members consist of mother, father, step-parents, foster parents, brothers, sisters, spouse and children. . . .  Immediate family members will be placed on the visiting list[,] absent strong circumstances which would preclude visiting[,] after an inmate has advised staff he wishes to have them added to his visiting list.").[2]

30.     Section 540.44(b) addresses visits by "[o]ther relatives," including "grandparents, uncles, aunts, in-laws, and cousins," who "may be placed on the approved list if the inmate wishes to have visits from them regularly and if there exists no reason to exclude them."  28 C.F.R. § 540.44(b) (italics omitted).

31.     Section 540.44(c) states that the visiting list may also include "[f]riends and associates" if the inmate has a pre-incarceration relationship with them:

> The visiting privilege ordinarily will be extended to friends and associates having an established relationship with the inmate prior to confinement, unless such visits could reasonably create a threat to the security and good order of the institution.  Exceptions to the prior relationship rule may be made, particularly for inmates without other visitors, when it is shown that the proposed visitor is reliable and poses no threat to the security or good order of the institution.

28 C.F.R. § 540.44(c) (italics omitted); *see also* Institution Supplement, § IV.B (using similar language and "further defin[ing]" friends and associates "as anyone who does not meet the criteria as an immediate family member").

32.     As originally promulgated in 1980, Section 540.44(c)'s prior relationship rule was narrower than it is today.  The original 1980 version mandated the "existence of an established relationship prior to confinement for friends and associates of inmates" in Security Level 4-6 Institutions—now known as Medium and High Security Level Institutions [3]—as well as

___

[2] *Available at* https://www.bop.gov/locations/institutions/tha/THX_visit_hours_111219.pdf.

[3] *See Control, Custody, Care, Treatment and Instruction of Inmates*; *Security Level Designations*, 56 Fed. Reg. 4158, 4159 (Feb. 1, 1991) (changing naming of security levels).

Administrative Institutions. *Control, Custody, Care, Treatment and Instruction of Inmates*, 45 Fed. Reg. 44220, 44226 (June 30, 1980); *see id.* at 44233 (setting forth relevant text of Section 540.44(c)). By contrast, in Security Level 1-3 (*i.e.*, Minimum and Low Security Level) Institutions, "[t]he visiting privilege [would] ordinarily be extended to friends and other non-relatives, unless visits could reasonably create a threat to the security and good order of the institution[.]" *Id.* According to BOP, the "increased security level required" in Level 4-6 Institutions mandated this difference in visiting requirements. *Id.* at 44226.

33. In 2003, BOP expanded Section 540.44(c)'s prior relationship rule in order to cover "friends and associates" of inmates in all BOP institutions, regardless of security level. Specifically, BOP amended Section 540.44(c) to require that regular visiting privileges at all institutions would "ordinarily be extended to friends and associates only when the relationship had been established prior to confinement." *Visiting Regulations: Prior Relationship Requirement*, 68 Fed. Reg. 10656, 10657 (Mar. 6, 2003). According to BOP, the change would "provide for uniformity of visiting procedures for all security levels and to maintain the security and good order of the institution while continuing to afford inmates with reasonable and equitable access to visiting." *Id.* Further, "[t]he heightened security measures were deemed necessary to better ensure that inmates do not abuse visiting privileges or use them to further criminal activity." *Id.*

34. When BOP promulgated the original 1980 and revised 2003 versions of 28 C.F.R. § 540.44, it followed notice-and-comment rulemaking procedures. *See Control, Custody, Care, Treatment and Instruction of Inmates*, 45 Fed. Reg. at 44228 (amending regulations "pursuant to the rulemaking authority vested in the Attorney General in 5 U.S.C. 552(a) and delegated to the Director of the Bureau of Prisons"); *Visiting Regulations: Prior Relationship*, 68 Fed. Reg. at

10658 ("Under the rulemaking authority vested in the Attorney General in 5 U.S.C. 552(a) and delegated to the Director, Bureau of Prisons, we amend 28 CFR part 540 as set forth below.").

35.     Public comments on BOP's 2003 proposal to expand the prior relationship rule "expressed concerns about the impact on family visits (for example, children born after the inmate was incarcerated and new extended family members)." *Visiting Regulations: Prior Relationship*, 68 Fed. Reg. at 10657.  In response, BOP "note[d] that the prior relationship requirement pertains to friends and associates (28 C.F.R. 540.44(c))" and "***[t]he prior relationship requirement does not apply to immediate family members*** (28 C.F.R. 540.44(a)) and other relatives (28 C.F.R. 540.44(b))."  *Id.* (emphasis added).

36.     Thus, pursuant to BOP's own notice-and-comment rulemaking procedures, the prior relationship rule only applies to "friends and associates," and not to immediate family members or other relatives.

**B.      BOP's Unannounced Revision to 28 C.F.R. § 540.44(c)**

37.     Plaintiff and Mrs. Troya were married on September 22, 2019.

38.     Defendants recognize Plaintiff's marriage to Mrs. Troya.

39.     In or around October 2019, Plaintiff submitted to SCU staff his request to include Mrs. Troya on his visiting list for an in-person, non-contact visit.  When making this request, Plaintiff followed all necessary BOP regulations and USP-specific policies for listing an immediate family member as a visitor.  Around this time, Mrs. Troya also completed Visitor Information Form (BP-AO629) and submitted information for a background check.

40.     Nonetheless, SCU staff denied Plaintiff's request.  On multiple occasions, on or around October 30, 2019 and November 7, 2019, SCU staff represented to Plaintiff that the basis of the denial was the fact that Plaintiff did not know his wife prior to his incarceration.

41.     The denial of this visiting request came as a surprise to Plaintiff.  Since the beginning of his incarceration, he has consistently maintained a visiting list that includes his parents, three siblings, grandparents, aunt, and minister of record.  He receives visits from these family members every two years.  He also receives visits from volunteers with Prisoner Visitation and Support, whom he did not know before his incarceration and with whom he has no other relationship.

42.     Plaintiff exhausted his administrative remedies at the institutional level on November 21, 2019, when the then-Complex Warden issued a final denial.  The sole reason provided for the denial was the fact that Plaintiff did not know his wife prior to incarceration. Further, the denial could not have been based on any security concerns about Plaintiff or Mrs. Troya, because BOP did not present any specific security-related concerns associated with Mrs. Troya, and because Plaintiff has consistently received other non-legal visitors since the beginning of his incarceration (including non-relatives with whom he had no pre-incarceration relationship).

43.     Between January and April 2020, the BOP Regional and Central Offices denied Plaintiff's administrative remedy appeals, again citing the prior relationship rule.  By written decision dated January 3, 2020, the North Central Regional Office stated that the denial of Plaintiff's spousal visiting request on the basis of "insufficient documentation to support the existence of a relationship prior to incarceration . . . [was] in accordance with policy."  Likewise, by written decision dated April 21, 2020, the Central Office in Washington, D.C. issued a final denial of Plaintiff's request based upon its "concur[rence] with [the Warden's] assessment."

44.     By endorsing the prior relationship rule's application to Plaintiff's spouse and confirming that this application was consistent with agency "policy," BOP revealed that it had constructively amended Section 540.44 to expand subsection (c)'s prior relationship rule without

undertaking the requisite notice-and-comment rulemaking.  Further, by departing from its own written regulations without offering a reasoned explanation, BOP engaged in arbitrary, capricious, and otherwise improper and unlawful agency action.  In turn, BOP's revision to Section 540.44 prevents inmates from visiting with spouses and other immediate family members whom they did not know prior to incarceration, infringing inmates' First Amendment right to association with family members.

45.     Upon information and belief, at least one other BOP inmate's request to include his spouse on his visiting list was denied in reliance on BOP's new policy of applying the prior relationship rule to immediate family members.

**C.     Defendants' Ongoing Refusal to Reconsider Plaintiff's Spousal Visiting Request**

46.     Following the denial from BOP's Central Office, Plaintiff made a new visiting request for Mrs. Troya, which was approved by SCU staff on in November 2020.  During this time, Mrs. Troya made arrangements to visit Plaintiff in March 2021.  But prior to her visit, SCU staff again advised Plaintiff that the visit had been denied because Plaintiff did not know Mrs. Troya before his incarceration.

47.     By letter dated April 16, 2021, in an effort to avoid unnecessary litigation, undersigned counsel asked the then-Warden to reevaluate his November 2019 denial of Plaintiff's visiting request.  Counsel's letter expressly discussed BOP's 2003 statement in the Federal Register, when promulgating Section 540.44(c) as currently published, that "[t]he prior relationship requirement does not apply to immediate family members."  *Visiting Regulations: Prior Relationship*, 68 Fed. Reg. at 10657.

48.     By letter dated April 27, 2021, the Warden responded to undersigned counsel's letter.  In that response, the Warden reiterated that the denial of Plaintiff's in-person visiting

request was based solely upon the prior relationship rule.  Specifically, the Warden stated:

> I am in receipt of your correspondence regarding Daniel Troya's request to add his new wife to his list of social visitors.
>
> I have reviewed your concerns. The Bureau of Prisons recognizes Mr. Troya's marriage; however, my review of his in-person visitation request under the prior relationship requirement is still necessary due to the security concerns presented. This review is anything but arbitrary. I am ultimately responsible for the safe, secure, and orderly running of the institutions on this complex. Allowing inmates to effectively avoid the scrutiny of the prior relationship requirement creates a myriad of security concerns and risks which are simply non-negotiable. Mr. Troya's ability to visit with new extended family members who have been added since his incarceration, as contemplated by the policy to which you refer, has not been affected by my review of his request to have in-person visitation with his new wife.
>
> Mr. Troya maintains active social ties with his family of origin and communicates regularly with his new wife.
>
> I trust this addresses your concerns.

49.     The Warden's letter did not identify any "security concerns" with Mrs. Troya's visit except for Plaintiff's lack of a pre-incarceration relationship with her.  Yet, the Warden's letter acknowledged the existence of the "policy to which [Plaintiff's attorneys] refer," *i.e.*, BOP's 2003 Federal Register statement that the prior relationship rule does not apply to immediate family members.

50.     By letter dated September 1, 2021, undersigned counsel wrote to BOP's North Central Regional Office to request that it reevaluate the denial of Plaintiff's visiting request.

51.     By letter dated September 16, 2021, the North Central Regional Office responded to undersigned counsel's letter.  The response stated that "[d]ue to the security concerns presented," it would "support the Warden's decision to not add Mrs. Troya to the visiting list." The response did not identify any "security concerns" supposedly presented by Mrs. Troya's visit,

except to note that "prior to incarceration, Mrs. Carli Troya (nee Brohrer [*sic*]) was not a friend or associate of Daniel Troya as they had no contact or association with each other.  Mrs. Troya has also not previously visited this institution."

52.     By letter dated November 8, 2021, undersigned counsel wrote to BOP's Central Office to request that it reevaluate the denial of Plaintiff's visiting request, but has not yet received any response.

**FIRST CAUSE OF ACTION**
**(Violation of the Administrative Procedure Act**
**for Failure to Follow Notice-and-Comment Rulemaking Procedures)**

53.     The preceding Paragraphs are incorporated and reasserted as if fully set forth herein.

54.     The APA requires courts to "hold unlawful and set aside" agency action that is "without observance of procedure required by law."  5 U.S.C. § 706(2)(D).

55.     BOP promulgated the currently published version of 28 C.F.R. § 540.44 and its prior relationship rule pursuant to notice-and-comment rulemaking.  Therefore, Section 540.44 and the prior relationship rule may only be substantively revised pursuant to those same rulemaking procedures.

56.     By revising Section 540.44 so that the prior relationship rule also covers inmates' spouses and other immediate family, and by applying the expanded rule in order to deny Plaintiff's spousal visiting request, BOP took agency action that circumvented the notice-and-comment rulemaking procedures set forth at 5 U.S.C. § 553.

57.     As a threshold matter, BOP never published its newly expanded prior relationship rule as a proposed rule in the Federal Register, nor did it publish in the Federal Register: (a) a statement of the time, place, and nature of public rulemaking proceedings related to the revision to Section 540.44; (b) reference to the legal authority under which the revision

was proposed; or (c) either the terms or substance of the proposed revision.  *See* 5 U.S.C. § 553(b)(1)-(3).

58.    Further, prior to revising the regulation, BOP did not name, personally serve, or otherwise give notice to all persons subject to the expanded prior relationship rule.  *See* 5 U.S.C. § 554(b).

59.    In addition, BOP did not seek public comment on the expanded prior relationship rule under the APA; did not give all interested parties an opportunity to participate in the revision through submission of written data, views, or arguments, as required by the APA; and did not consider such written data, views, or arguments presented by interested persons, as required by the APA.  *See* 5 U.S.C. § 554(c).

60.    Finally, BOP never published the revised prior relationship rule in the Federal Register 30 days before its effective date, and failed to publish the revision as a final rule in the Federal Register.  *See* 5 U.S.C. §§ 553(d), 552(a)(1).

61.    Given Defendants' failure to comply with rulemaking requirements, the expanded prior relationship rule and its application to Plaintiff's spousal visiting request violates the APA.

### SECOND CAUSE OF ACTION
**(Violation of the Administrative Procedure Act for Taking Arbitrary, Capricious, and Otherwise Improper and Unlawful Agency Action)**

62.    The preceding Paragraphs are incorporated and reasserted as if fully set forth herein.

63.    The APA requires courts to "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

- 16 -

64.     As noted above, BOP regulations require wardens to place immediate family members, including spouses, on the visiting list, "absent strong circumstances which preclude visiting." 28 C.F.R. § 540.44(a).

65.     Prior to implementing the new policy at issue, BOP publicly stated that Section 540.44(c)'s prior relationship rule applied only to "friends and associates," and not to "immediate family members" or "other relatives." *Visiting Regulations: Prior Relationship*, 68 Fed. Reg. 10656, 10657 (Mar. 6, 2003).

66.     By revising Section 540.44 so that subsection (c)'s prior relationship rule also covers immediate family,  BOP acted inconsistently with and departed from its prior stated interpretation of Section 540.44(c), without providing a reasoned explanation for this departure. In doing so, it engaged in arbitrary and capricious agency action, violating the APA.

67.     Further, by expanding Section 540.44(c)'s prior relationship rule to cover Plaintiff's spousal visiting request and then denying the request on that basis, rather than evaluating Plaintiff's request under Section 540.44(a) as written, Defendants failed to adhere to their own published regulations regarding immediate family member visits.  This amounted to yet another arbitrary, capricious, or otherwise improper and unlawful agency action in violation of the APA.

### THIRD CAUSE OF ACTION
**(Violation of the First Amendment and the Administrative Procedure Act)**

68.     The preceding Paragraphs are incorporated and reasserted as if fully set forth herein.

69.     The APA requires courts to "hold unlawful and set aside" agency action that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

70.     The First Amendment to the United States Constitution guarantees that inmates "retain a limited constitutional right to intimate association with relatives," including visitation

with family members.  *Easterling v. Thurmer*, 880 F.3d 319, 322 (7th Cir. 2018) (per curiam) (citing *Overton v. Bazzetta*, 539 U.S. 126, 131-32 (2003), and *Turner v. Safley*, 482 U.S. 78, 95-96 (1987)); *accord Manning v. Ryan*, 13 F.4th 705, 708 (8th Cir. 2021) (per curiam) (joining "the Seventh Circuit in holding that prison officials who permanently or arbitrarily deny an inmate visits with family members in disregard of the factors described in *Turner* and *Overton* have acted in violation of the Constitution" (citing *Easterling*, 880 F.3d at 323)).  Thus, restrictions on the right of familial association must be "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89 (invalidating restrictions on inmate marriages as unconstitutional).

71.     The expanded prior relationship rule violates the First Amendment as applied to Plaintiff's request to include his wife on his visiting list.  The requirement is unconstitutional under *Turner* because (a) Plaintiff's wife passed background checks and BOP has failed to present any specific security concerns associated with her; (b) there are no alternative means for Plaintiff and his wife to visit in person; (c) accommodating Mrs. Troya's visit would not undercut any legitimate government interest or negatively affect prison resources, because Plaintiff already receives visits from other family members, as well as from non-relatives whom he did not know before his incarceration, and because Plaintiff's visit with his wife would be subject to the same non-contact visitation procedures used for other visits by relatives and non-relatives alike; and (d) there are ready alternatives to permanently barring Mrs. Troya from visiting in person simply because of when her relationship with Plaintiff began, such as by subjecting her to the same security procedures for non-contact visits that BOP applies to Plaintiff's other non-contact visitors.

72.     For similar reasons, the expanded prior relationship rule facially violates inmates' First Amendment right to associate with immediate family members whom they did not know prior to incarceration, in circumstances that do not present any security concerns.

73.     Because Defendants' actions are "contrary to constitutional right," 5 U.S.C. § 706(2)(B), the expanded prior relationship rule and its application to Plaintiff's spousal visiting request also violates the APA.

## V.     REQUEST FOR RELIEF

74.     WHEREFORE, Plaintiff respectfully requests that the Court:

(a)     declare that Defendants' expansion of 28 C.F.R. § 540.44(c)'s prior relationship rule to cover BOP inmates' requests to permit visits by immediate family members identified in 28 C.F.R. § 540.44(a) did not comply with the APA's notice-and-comment requirements, 5 U.S.C. §§ 553-554, and therefore Defendants' regulatory revision and related denial of Plaintiff's spousal visiting request violates the APA by failing observe procedure required by law, 5 U.S.C. § 706(2)(D);

(b)     declare that Defendants' expansion of 28 C.F.R. § 540.44(c)'s prior relationship rule to cover BOP inmates' requests to permit visits by immediate family members identified in 28 C.F.R. § 540.44(a), and Defendants' related denial of Plaintiff's spousal visiting request, is arbitrary, capricious, an abuse of discretion, and otherwise unlawful agency action in violation of the APA, 5 U.S.C. § 706(2)(A);

(c)     declare that Defendants' expansion of 28 C.F.R. § 540.44(c)'s prior relationship rule to cover BOP inmates' requests to permit visits by immediate family members identified in 28 C.F.R. § 540.44(a), and Defendants' related denial of Plaintiff's spousal visiting request, violates the First Amendment to the U.S. Constitution, and thereby also violates the APA, 5 U.S.C. § 706(2)(B);

(d)     preliminary and permanently enjoin Defendants and their officers, agents, servants, employees, and attorneys, and all persons acting in concert or participation with them, from

applying 28 C.F.R. § 540.44(c)'s prior relationship rule to BOP inmates' requests to permit visits by immediate family members identified in 28 C.F.R. § 540.44(a), and vacate and reverse Defendants' related denial of Plaintiff's request to permit his spouse to visit him in a non-contact setting;

(e)     award Plaintiff his costs and reasonable attorneys' fees incurred in this action; and

(f)     award such other and further relief as the Court determines to be just and proper.


DATED:  March 21, 2022                          Respectfully submitted,

                                                 /s/ Murad Hussain
                                                Murad Hussain (D.C. Bar No. 999278)
                                                Christine J. Choi (D.C. Bar No. 1708164)
                                                ARNOLD & PORTER KAYE SCHOLER LLP
                                                601 Massachusetts Avenue, NW
                                                Washington, D.C. 20001
                                                Telephone: (202) 942-5000
                                                Fax: (202) 942-5999
                                                Murad.Hussain@arnoldporter.com
                                                Christine.Choi@arnoldporter.com

                                                *Attorneys for Plaintiff*