IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL TROYA, | ) |
|             Plaintiff, | ) |
| v. | ) Civil Action No. 22-767 |
| FEDERAL BUREAU OF PRISONS, *et al.* | ) |
|             Defendants. | ) |

## DECLARATION OF DANIEL TROYA IN SUPPORT OF HIS MOTION FOR PRELIMINARY INJUNCTION

I, Daniel Troya, being over the age of 18, make this declaration in support of my motion for preliminary injunction in the above-captioned action, to the best of my knowledge and to the best of my recollection:

1. I am the plaintiff in the above-captioned action.

2. I am an inmate housed in the Special Confinement Unit ("SCU") of the United States Penitentiary ("USP") at Terre Haute, Indiana. The USP is a division of the Federal Correctional Complex ("FCC") at Terre Haute, and is part of the Federal Bureau of Prisons ("BOP").

3. I arrived at the USP in 2009. Since then, I have observed BOP apply its visiting regulations by routinely granting inmates' visiting requests for immediate family members—including an inmate's mother, father, brothers, sisters, spouse, and children—unless there are security concerns.

1

4.  Even when there are security concerns, I have observed BOP approve at least one other USP inmate's requests for immediate family member visits.

5.  Whether the visit is with family or friends, all non-legal visits for inmates in the SCU occur in secure facilities and do not allow for contact between the inmate and visitor.

6.  Since 2009, I have submitted visiting requests for and maintained a visiting list that includes my family and minister of record. My requests to include my parents, grandparents, two brothers, and sister on the visiting list were approved on July 2, 2010. Meanwhile, my request to include my minister of record, whom I did not know before my incarceration, was approved on October 24, 2017.

7.  As my family lives in Texas (and before that, Florida) and must drive to see me, I receive visits from these family members every two years.

8.  I also receive visits from volunteers with Prisoner Visitation and Support, a program specifically designed for inmates that receive infrequent visits. I did not know these volunteers before my incarceration, and I have no relationship with them aside from their visits.

9.  In 2016, I met my now-wife, Carli Troya (née Bohrer), through a pen pal program. Carli currently resides in Kansas City, Kansas.

10. Carli and I exchange emails multiple times every day, and I use over half of my allotted phone calls to speak with her. These calls typically amount to 300 minutes per month, though they are currently 510 minutes as a result of limited visitation during the pandemic. Despite our frequent contact, we have yet to visit one another.

2

11. On September 22, 2019, Carli and I were married through a telephonic ceremony and received a Certificate of Marriage from the state of Kansas. USP staff has recognized this marriage.

12. Shortly after our marriage, I submitted a verbal request to SCU staff to include Carli on my visiting list. I also sent Carli a Visitor Information Form (BP-AO629) to complete as part of the visitor approval process. I am not aware of any response from BOP informing Carli of any issues with her application or background check that would preclude her from visiting.

13. Nonetheless, on October 30, 2019, the SCU Unit Manager informed me that my request to include Carli on my visiting list was denied because we did not know each other before my incarceration. On October 31, 2019, I submitted a BP-8 Form, setting forth an informal complaint regarding this denial. On November 7, 2019, the Unit Manager responded to the BP-8, again denying the visiting request because my "prospective visitor did not know [me] prior to [my] incarceration." Attached as Exhibit 1 is a true and correct copy of my BP-8 Form and the Unit Manager's denial.

14. On November 8, 2019, I submitted a BP-9 Request for Administrative Remedy, which then-Complex Warden TJ Watson denied on November 21, 2019. Attached as Exhibits 2 and 3 are true and correct copies of my BP-9 Request for Administrative Remedy and the Warden's denial. In denying my Request for Administrative Remedy, the Warden noted that "[t]he prospective visitor was denied . . . due to the applicant not being able to provide supporting documentation to prove a relationship prior to your confinement." The Warden also wrote, "The prospective visitor noted on the visitation application that she did not know you prior to incarceration. Therefore, this response to your Request for Administrative Remedy is denied."

15. I submitted a Regional Administrative Remedy Appeal on December 2, 2019, which the Regional Director denied on January 3, 2020. Attached as Exhibits 4 and 5 are true and correct copies of my Regional Administrative Remedy Appeal and the Regional Director's denial. In denying my Appeal, the Regional Director stated that, "[a]s indicated in the Warden's response, your proposed visitor's application was reviewed and subsequently denied as there was insufficient documentation to support the existence of a relationship prior to incarceration. The decision is in accordance with policy. Accordingly, the Warden's decision is supported."

16. On January 21, 2020, I submitted an Administrative Remedy Appeal with the Bureau of Prison's Central Office, which was denied on April 21, 2020. Attached as Exhibits 6 and 7 are true and correct copies of my Central Office Administrative Remedy Appeal and the Central Office's denial. The Central Office's reason for denying my Appeal was that it "concur[red] with the manner in which the Warden and Regional Director addressed your concerns."

17. Following a change in personnel amongst the SCU counselors, I later asked Carli to submit a new request. The new SCU Counselor approved the request on November 25, 2020. As part of that approval process, Carli passed a background check.

18. Following the approval, Carli made arrangements to visit Terre Haute in February 2021. However, in January 2021, the SCU Counselor informed me that the SCU Manager had withdrawn that approval. On February 10, 2021, SCU staff advised me that the visit was again denied because of the prior relationship requirement.

19. In April 2021, my attorneys sent a letter to the Warden explaining why the prior relationship requirement does not apply to my wife's visitation request, and asking him to consider

that request without applying the prior relationship requirement. The Warden responded that he would not do so because of the security concerns associated with visits from individuals whom an inmate did not know prior to incarceration. In September and November 2021, my attorneys sent letters to the Director of the North Central Regional Office and the Assistant Director of the BOP Office of General Counsel, informally requesting a reevaluation of my visiting request. The North Central Regional Office likewise declined to reevaluate my visiting request, citing unspecified security concerns, while the Office of General Counsel apparently declined to respond.

20. I am not aware of any reason that Carli would present a security concern during her visit. Further, my understanding is that such a visit would occur in a secure no-contact facility, just as all my other non-legal visits have.

21. The ongoing denial of my visiting requests, simply because I did not know my wife before my incarceration, has placed a great burden on my marriage, and has interfered with my ability to maintain my relationship with my wife.

22. I am not the only one affected by the BOP's application of the prior relationship rule to immediate family members. I am aware of at least one other SCU inmate whose visitation request for his spouse—whom he married after his incarceration—was denied because this inmate did not know his spouse before his incarceration.

23. This denial of visiting requests for spouses and other immediate family whom an inmate did not know before incarceration contradicts my observation of how BOP's regulations are usually applied. Throughout my time within the BOP, I have observed BOP routinely grant visiting requests for spouses, who are considered immediate family members.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on Date: 2-20-22

_____
Daniel Troya